UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANGELINA EMERGENCY MEDICINE ASSOCIATES PA, et al., | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No. 3:18-CV-00425-X |
| HEALTH CARE SERVICE CORPORATION, et al., | § § § § | |
| *Defendants.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case is in all ways an absolute unit[1]—in the serious nature of its subject matter, in the scope of claims brought, and in the amount of damages sought. The plaintiffs (over fifty physicians associations) brought multiple federal, state statutory, and state common law claims against some forty-odd defendants, a bunch of insurance companies and medical organizations, alleging they'd been underpaid for emergency services they provided to patients.

To facilitate a swifter, cleaner resolution of this mammoth matter, the Court split discovery in half, focusing on "identification and clarification of the [legal] claims" in Phase 1. In accordance with the Court's scheduling order, the defendants filed a joint omnibus motion to dismiss several of the plaintiffs' claims after Phase 1

---

[1] *See, e.g., Absolute Unit*, KNOW YOUR MEME, https://knowyourmeme.com/memes/absolute-unit; *see also* Emilia Petrarca, *Why Is "Absolute Unit" a Menswear Meme?*, THE CUT (Feb. 8, 2018), https://www.thecut.com/2018/02/absolute-unit-meme.html ("[A]n absolute unit is something or someone that is comically oversize.").

1

had concluded, arguing that these claims could be cast aside solely on legal grounds. That motion to dismiss is now ripe.

Having considered these filings, the Court **GRANTS IN PART** and **DENIES IN PART** the defendants' omnibus motion to dismiss.  The Court **DISMISSES WITH PREJUDICE:** (1) all claims based on quantum meruit (Count III); (2) all claims pursuant to Texas Insurance Code sections 541.060, 1271.155, and 1301.0053 (Count VI); and (3) all claims under the Texas Prompt Pay Act (Count VII).  The Court also **DISMISSES WITHOUT PREJUDICE** all claims based on breach of the duty of good faith and fair dealing (Count IV).  And finally, the Court **DISMISSES AS MOOT** any non-ERISA-based claims involving Capital BlueCross and Care First, Inc. ("CareFirst").  However, the Court **DENIES** the motion to dismiss with respect to: (1) defendants' anti-assignment provision defense; (2) jurisdiction over any remaining claims involving Blue Cross and Blue Shield of South Carolina ("South Carolina Blue") and Blue Cross and Blue Shield of Florida, Inc., d/b/a Florida Blue ("Florida Blue"); and (3) any remaining ERISA-based claims involving Capital BlueCross, and CareFirst.

*    *    *

When delivering its opinions, the Court customarily first recites the facts of the case, then the applicable law, and then its reasoning.  Given the complexity of this case, the Court instead organizes this opinion and order by claim, according to the organization the parties followed in their respective motion and response.[2]  When

---

[2] *See* Doc. 212 and Doc. 218.

the Court reaches a particular claim, it will then recite the pertinent facts and law that relate specifically to it.  The Court believes this method of organization will make its holdings easier to understand and apply.  However, the Court must detail at the outset the overall legal standard it follows when confronting any motion to dismiss.

To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[3]  If the Court's analysis requires factual determinations, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.[4]  Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if referred to in the complaint and otherwise central to its claims.[5]

In this specific instance, though, the Court focuses its gaze primarily on the law, not the facts.  And when doing so, the Court doesn't accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[6]  The Court's plumb line, as usual, is plausibility, meaning "more than a sheer possibility that a defendant has acted unlawfully."[7]  In that vein, the Court may dismiss claims for a variety of law-related reasons.  For instance, dismissal of a claim is proper if it fails to plead all required elements necessary to obtain relief.[8]  Put another way, the Court

---

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[4] *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

[5] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

[6] *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8] *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

may find a claim that lacks a required element implausible because we cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]

In summary, the primary purpose of this motion to dismiss is not to rule on factual matters that require further discovery, but to determine which legal claims—if any—can be dismissed as a matter of law.  Accordingly, the Court now turns to the first dispute of law between the parties.

## I.      Quantum Meruit (Count III)

In their response to the defendants' motion to dismiss, the plaintiffs helpfully categorized the health insurance claims at issue into four "buckets":

- Insurance claims made in Texas by patients insured in Texas by Blue Cross Blue Shield of Texas ("Texas Blue").  The Court refers to this first bucket as Texas Blue Insured;

- Insurance claims made in Texas by patients insured in Texas by self-funded ERISA-governed plans administered by Texas Blue. The Court refers to this second bucket as Texas Blue Self-Funded;

- Insurance claims made in Texas by patients insured outside of Texas by other Blue Plan providers processed by Texas Blue.  The Court refers to this third bucket as BlueCard Insured; and

---

[9] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Court may find claims implausible (and thus dismiss them) even without "judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *see also Starrett v. U.S. Dep't of Def.*, 763 F. App'x 383, 384 (5th Cir. 2019).

- Insurance claims made in Texas by patients insured outside of Texas by self-funded ERISA-governed administered by other Blue Plan providers. The Court refers to this fourth bucket as BlueCard Self-Funded.[10]

In their complaint, the plaintiffs argue they may recover in quantum meruit as to the Texas Blue Insured and BlueCard Insured insurance claims. Quantum meruit is a state-law equitable remedy founded in unjust enrichment.[11]  To recover from the defendant, the plaintiff must show that (1) they rendered valuable services or materials (2) to the defendant (3) which the defendant accepted, used, and enjoyed, and (4) the circumstances placed the defendant on reasonable notice that the plaintiff expected compensation for the services or materials.[12]  And it isn't enough for a plaintiff to simply show that his actions benefitted the defendant.  "[T]he plaintiff must show that his efforts were undertaken *for* the person sought to be charged"— *i.e.*, the defendant.[13]

The complaint states that by "providing medically necessary emergency services" to the defendants' insurance customers, the plaintiffs "conferred a benefit" on them by satisfying their "obligations to arrange and pay for healthcare services" for these members.[14]  But saddling someone with a debt to repay hardly qualifies as a benefit.  And the very phrasing of the plaintiffs' quantum meruit claim implies its

---

[10] Doc. 218 at 15.

[11] *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985).

[12] *Id.*

[13] *Truly v. Austin*, 744 S.W.2d 934, 937 (Tex. 1988) (emphasis in original).

[14] Doc. 55 at 57.

failure.  Serving a defendant's *customers* is hardly the same as serving the defendant *itself*.

On these points, the Court finds *Encompass Office Solutions, Inc. v. Ingenix, Inc.*[15] highly persuasive.  In that case a provider of medical facilities and equipment (Encompass) sued an insurer (United) using the same line of logic: underpayment of insurance claims + provision of services to United members = recovery in quantum meruit.[16]  The district court correctly reasoned that "[e]ven if United received some benefit as a result of Encompass providing medical services to its insureds, a proposition the court finds dubious, Encompass's services were rendered to and for its patients, not United."[17]  Recovery in quantum meruit cannot be had from an insurer based on services rendered to an insured, because those services aren't directed to *or* for the benefit of the insurer.[18]  As our sister district courts have repeatedly pointed out, "a ripened obligation to pay money to the insured . . . hardly

---

[15] 775 F. Supp. 2d 938 (E.D. Tex. 2011).

[16] *Id.* at 966; *see also Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Tex.*, 2012 WL 1252512 at *3 (S.D. Tex. Apr. 11, 2012).

[17] *Id.*

[18] The plaintiffs argue that *Encompass* and similar cases can be distinguished because "the courts in those cases found that plaintiffs did not allege they provided services specifically to defendants."  Maybe the plaintiffs were relying on a different case called *Encompass*.  *See, e.g.*, *Encompass*, 775 F. Supp. 2d at 966 ("Encompass counters that *it has provided valuable services to United* . . . . (emphasis added)).  And the Court is unpersuaded by the other district court cases the plaintiffs marshal in their favor.  As a representative example, *DAC Surgical Partners*, 2011 WL 3841946 (S.D. Tex. Aug. 30, 2011), in which a Southern District of Texas court ruled that the plaintiffs stated their quantum meruit claim by merely alleging provision of a benefit, provides no indication of the facts that made this ruling plausible—which is the standard at the motion to dismiss stage.  *Id.* at *6; *but see Denton*, 504 U.S. at 33; *Southland*, 365 F.3d at 361 (noting that "conclusory allegations" cannot survive a motion to dismiss).

can be called a benefit."[19]  The plaintiffs' claims for recovery under quantum meruit therefore fail on the law, and Count III is dismissed.[20]

## II.   Breach of Duty of Good Faith and Fair Dealing (Count IV)

Next, the Court addresses the defendants' alleged breach of duty of good faith and fair dealing.  Texas courts have held that this implied covenant, rarely imposed in the state's common law, may arise in the insurance context based on "the parties' unequal bargaining power . . . ."[21]  Plaintiffs may state a cause of action under this tort by alleging "that there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay."[22]

The plaintiffs argue that the defendants breached their duty of good faith and fair dealing under the Texas Blue Insured and BlueCard Insured policies.  Their allegations sound familiar: because the plaintiffs provided medical services to patients carrying these policies, "who assigned their rights to benefits under the plans for services to" the plaintiffs, and the defendants "significantly underpaid" for those

---

[19] *Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D. NY 2001); *see also Encompass*, 775 F. Supp. 2d at 966 n.11 (quoting *Travelers*), *Tex. Spine & Joint Hosp., Ltd. v. Blue Cross & Blue Shield of Tex.*, 2015 WL 13649419 at *7 n.9 (E.D. Tex. May 28, 2015) (not reported) (also quoting *Travelers*).

[20] The defendants also argue that the plaintiffs' quantum meruit claims should be dismissed because such a claim is unavailable under Texas law where it duplicates a contract remedy. As the defendants' other argument on benefits is enough to dismiss the claim, the Court declines to address this line of reasoning.

[21] *Arnold v. Nat'l Cty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987).  This heavily implies, by the way, that this tort should primarily (perhaps only) be exercised in relation to this unbalanced bargaining relationship—*i.e.*, by an insured directly against an insurer, *not* by the insured's assignee.

[22] *Id.*

7

services and "failed to provide . . . adequate written explanations" for this underpayment, the plaintiffs may recover.[23]

In their motion to dismiss, the defendants argue first that the plaintiffs haven't stated a claim for breach of this duty because an assignor can only assign ripened torts. To clarify, under Texas law, an assignment is simply a transfer of some right, interest, or property. It "operates by way of agreement or contract."[24] And it is a long-established principle of Texas common law that "contracts . . . are not favored, and an instrument is not given effect as an assignment of an expectancy or future interest unless it clearly manifests the intention . . . to sell, assign or convey [the] expectancy or future interest."[25] The Court notes that the plaintiffs have not pled that the patients who assigned them this as-yet-unripe tort expected it to ripen in the future.[26] So the Court is inclined to dismiss this claim, but without prejudice in order to allow repleading.

Moreover, the plaintiffs have failed to plead or argue an independent injury, as required by Texas law. In *USAA Texas Lloyds Co. v. Menchaca*,[27] the Texas Supreme Court held that:

---

[23] Doc. 55 at 59.

[24] *Univ. of Tex. Med. Branch at Galveston v. Allan*, 777 S.W.2d 450, 453 (Tex. App.—Houston [14th Dist.] 1989).

[25] *McConnell v. Corgey*, 262 S.W.2d 944, 947 (Tex. 1953).

[26] *See Wolters Village Mgmt. Co. v. Merchs. and Planters Nat'l Bank of Sherman*, 223 F.2d 793, 798 (5th Cir. 1955) ("It is clear that in general a right expected to arise in the future may be the subject of assignment, if expected to arise under a contract in existence at the time of the assignment.").

[27] 545 S.W.3d 479 (Tex. 2018).

8

> if an insurer's statutory violation causes an injury independent of the
> loss of policy benefits, the insured may recover damages for that injury
> even if the policy does not grant the insured a right to benefits. . . . [but]
> only if the damages are truly independent of the insured's right to
> receive policy benefits.[28]

Essentially, under Texas law, assuming for the sake of argument that assignment
actually occurred, the plaintiffs must show (or at the very least allege with sufficient
particularity) that they suffered some injury independent of their right to repayment
under the policy in order to recover for breach of the duty of good faith and fair
dealing.[29]

The plaintiffs fail to allege an independent injury in their complaint.[30]  They
allege the defendants underpaid them when reimbursing the Texas Blue Insured and
BlueCard Insured insurance claims (an alleged injury that is not "independent of the
loss of policy benefits") and that defendants didn't timely provide them with policy

---

[28] *Id.* at 499–500.

[29] The plaintiffs argue that they may still recover under the "entitled-to-benefits" rule
regardless of their success on the "independent-injury" rule. *See id.* at 495.  The "entitled-to-benefits"
rule allows recovery of benefits under an insurance policy by an insured as actual damages "if the
insurer's statutory violation causes the loss of the benefits." *Id.*  Existing Fifth Circuit caselaw does
indeed construe these two rules as separate routes for recovery for violations of the duty of good faith
and fair dealing. *See Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 452 (5th Cir.
2018).  But because, as detailed below, the Court finds that the plaintiffs lack standing on every alleged
state law claim, the plaintiffs may not recover under the "entitled-to-benefits" rule. *See id.* (holding
that a statutory violation must cause the loss of policy benefits for recovery under the "entitled-to-
benefits" rule to occur).

[30] The Court would normally allow repleading to let the plaintiffs plead a specific independent
injury.  However, when given the opportunity to state what independent injury they had suffered in
their response, they pointed only to the paragraph in their complaint that alleged they were entitled
to damages.  This is the definition of conclusory pleading.  The Court sees no way that the plaintiffs
could state a claim under the independent-injury rule.

documents, a delay which (even if there were an injury) still flows from the alleged denial of benefits to the plaintiffs.[31]

Because the plaintiffs didn't plead all the elements needed to ground a claim for breach of the duty of good faith and fair dealing, the Court dismisses without prejudice Count IV, the claim for breach of the duty of good faith and fair dealing.[32]

### III.   State Law Claims (Counts V, VI, and VII)

That takes care of the two common-law claims at issue. But what about statutory claims? The plaintiffs make several such claims, as previously mentioned, and the Court will deal with them in the order presented in the defendants' omnibus motion to dismiss.

First off, the parties have mostly divergent ideas about how many of the allegedly underpaid claims are governed by state law—namely, several provisions of the Texas Insurance Code[33] and the Texas Prompt Pay Act. They at least agree that these Insurance Code and Prompt Pay Act provisions don't apply to Texas Blue Self-Funded or BlueCard Self-Funded insurance claims, because ERISA preempts them.[34] And indeed it does. ERISA supersedes "any and all State laws insofar as they may

---

[31] *See Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 199 (Tex. 1998) (holding that injuries that stem or flow from denial of benefits are not "independent").

[32] The defendants also argue that plaintiffs haven't alleged sufficient facts to back up their claim of breach. This determination would require a factual analysis, and this claim is eminently resolvable on other grounds, so the Court declines to address this argument.

[33] Specifically, sections 541.060, 1271.155, and 1301.0053.

[34] Doc. 212 at 24; Doc. 218 at 32 n.11; *see also Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 274–75 (5th Cir. 2004).

now or hereafter relate to any employee benefit plan,"[35] unless they "regulate[]
insurance . . . ."[36]  So the statutes at issue only apply, if they apply at all, to Texas
Blue Insured and BlueCard Insured insurance claims.

The defendants argue that the state statutes only apply to claims under
insurance policies sold in Texas—*i.e.*, the Texas Blue Insured claims, *not* the
BlueCard Insured claims.  The plaintiffs respond that the text of these state statutes
isn't so limiting.  To discern who's right, the Court must "begin by analyzing the
statutory language, 'assum[ing] that the ordinary meaning of that language
accurately expresses the legislative purpose.'"[37]  By starting with the text, the Court
will "find the best reading of the statute by interpreting the words of the statute,
taking account of the context of the whole statute, and applying any appropriate
semantic canons."[38]  The Court will perform this analysis statute by statute,
addressing other arguments brought forth by the parties as it does.

### A.    Emergency Care Statutes

The Court will begin by interpreting the Insurance Code's emergency care
statutes.  Here's the first, focused on exclusive providers:

> If an  out-of-network provider  provides  emergency  care  as  defined
> by Section 1301.155 to an enrollee in an exclusive provider benefit plan,

---

[35] 29 U.S.C. § 1144(a).

[36] § 1144(b)(2)(A).

[37] *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010), *see also Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 445 (Tex. 2009) (Hecht, J. concurring) ("Ascertaining the meaning of a statutory text (or any text for that matter) begins with the language used, and if that language is plain enough, absent some obvious error or an absurd result, that is where the task ends.").

[38] Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 HARV. L. REV. 2118, 2163 (2016) (book review).

the issuer of the plan shall reimburse the out-of-network provider at the usual and customary rate or at a rate agreed to by the issuer and the out-of-network provider for the provision of the services and any supply related to those services.[39]

And the second: "A health maintenance organization [("HMO")] shall pay for emergency care performed by non-network physicians or providers at the usual and customary rate or at an agreed rate."[40]   Going forward, the Court will refer to the former law as the Exclusive Provider Statute and the latter as the HMO Statute.

The plaintiffs argue that the defendants violated both of these statutes by "significantly underpaying the [insurance] claims submitted . . . for emergency services" and seek damages totaling at minimum the difference between the usual and customary rate for the services provided and the amount the defendants paid for these services.[41]  The defendants retort in several ways, which the court will address in turn.

First, the defendants argue that the Exclusive Provider Statute only applies to "exclusive provider benefit plan[s]," and according to the definitions section of Insurance Code section 1301, these are exclusively plans "in which an insurer excludes" some or all benefits to an insured.[42]  An "insurer" refers to a set of insurance companies "authorized to issue, deliver, or issue for delivery in this state health

---

[39] TEX. INS. CODE § 1301.0053(a).

[40] *Id.* at § 1271.155(a).

[41] Doc. 55 at 59–60.

[42] TEX. INS. CODE § 1301.001(1).

insurance policies."[43]  Therefore, say the defendants, the Exclusive Provider Statute does not apply to the BlueCard Insured insurance claims.

The Court agrees wholeheartedly.  The text of the definitions section of section 1301 of the Insurance Code clearly cabins exclusive provider benefit plans to those issued or delivered within the state of Texas.  Courts do and should look to definitions for interpretational guidance.[44]  So the plaintiffs have failed to state a claim by not pleading that the providers connected to the BlueCard Insured insurance claims were authorized to issue or deliver insurance policies in Texas.

The plaintiffs also fail to allege the most basic element of a violation of the Exclusive Provider Statute: that the defendants' reimbursements were lower than the usual and customary rate.  They merely gesture at "significant underpayment," but seem noncommittal as to what rate of payment would be adequate.  This does not pass muster.[45]  Still, if these were the only defects in the plaintiffs' Exclusive Provider and HMO Statute claims, the Court would allow repleading.

But unfortunately, the plaintiffs' entire claim under both the Exclusive Provider and HMO Statutes rests on the notion that a private right of action exists to enforce these laws.  It does not.  SCOTX has made it abundantly clear that Texas statutes create a private right of action "only when a legislative intent to do so

---

[43] *Id*. at § 1301.001(5).

[44] *See, e.g. United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 244 (2002); *Conlon by Conlon v. Heckler*, 719 F.2d 788, 800 (5th Cir. 1983).

[45] *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

appears in the statute as written."[46]  The Court sees no indication of any intent to give out-of-network healthcare providers (or associations of them) a private right of action anywhere in the words of the Exclusive Provider or HMO Statutes.  And the plaintiffs tellingly have not argued that such an intent is present.  Their claims under the Exclusive Provider and HMO Statutes, also known as Count V, therefore fail as a matter of law because the Texas Legislature has not provided the plaintiffs with a right of action.

## B.    Claim Settlement Statute

The plaintiffs next turn to Insurance Code section 541.060, a statute prohibiting insurers from "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear."[47]  The plaintiffs first state that they have standing to bring suit on behalf of each patient due to assignment of benefits.[48]  The defendants

---

[46] *Brown v. Arturo De La Cruz*, 156 S.W.3d 560, 567 (Tex. 2004).  The Court is also persuaded by the reasoning in *Apollo MedFlight, LLC v. BlueCross BlueShield of Texas*, 2019 WL 4894263, at *3 (N.D. Tex. Oct. 4, 2019), which analyzes the statutes at issue here under the *Brown* standard and comes to the same conclusion the Court now reaches.

[47] TEX. INS. CODE § 541.060(a)(2)(A).

[48] Doc. 55 at 60–61.  Insurance Code section 541.151(1) provides a private right of action for "[a] person . . . against another person" whom they allege has acted in a manner defined as "an unfair method of competition or unfair or deceptive act or practice in the business of insurance."  The plaintiffs must rely on assignment from their patients because the Texas Supreme Court has already ruled that third parties do not have standing to sue for unfair claim-settlement practices under Insurance Code section 541.060 and 541.151.  *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 384 (Tex. 2000); *Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 150 (Tex. 1994); *see also Companion Prop. and Cas. Ins. Co. v. Opheim*, 2014 WL 4209586, at *2 (N.D. Tex. Aug. 26, 2014) (Fish, J.) (unpublished).

disagree, arguing that claims under Insurance Code section 541.060 may not be assigned.  The Court will address this threshold question before moving further.[49]

Though both parties marshal an impressive array of persuasive authority gleaned from federal district courts, the Court holds that interpretation of state law is generally best left to state courts.[50]  And the Court is in luck, because the Texas Supreme Court has settled this question of law.  When directly addressing a state appeals-court split over whether claims under the Deceptive Trade Practices Act—of which Insurance Code section 541 is a part—were assignable, Texas' highest civil court stated that allowing assignment "would defeat the primary purpose of the statute—to encourage individual consumers to bring such claims themselves."[51]  The Texas Supreme Court held, accordingly, that Deceptive Trade Practice "claims generally cannot be assigned by an aggrieved customer to someone else."[52]  This Court, likewise, will not allow third-party standing by assignment to thwart the "clear intent of the Legislature."[53]  The Court holds that claims brought under section

---

[49] *United States v. One 18th Century Columbian Monstrance*, 797 F.2d 1370, 1374 (5th Cir. 1986).

[50] *See Hardy v. Univ. Interscholastic League*, 759 F.2d 1233, 1235 (5th Cir. 1985) (agreeing with other circuit precedent that "the validity of . . . state-law claims . . . [is] a matter of state law best determinable by the state courts").

[51] *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 82 (Tex. 2004).

[52] *Id*. at 92.  The Texas Supreme Court noted a few exceptions, none of which are applicable here.  And the very wording of the Texas Supreme Court's holding assumes that the third party in question has been assigned a ripe claim—*i.e.*, the customer (or patient, in this instance) was "aggrieved" before making the assignment.  Because the specific grievance alleged here— underpayment of insurance claims to third-party healthcare providers—doesn't even involve the patient and occurred after patients assigned anything to the plaintiffs, the Court fails to see how the plaintiffs can reasonably claim they have standing to bring Count VI.

[53] *Id*. at 85.

541 of the Insurance Code may not be assigned to third parties, and therefore that plaintiffs lack standing to sue.[54]  The Court dismisses Count VI.

### C.    Texas Prompt Pay Act

Finally, the plaintiffs press a claim under Insurance Code section 1301 *et seq.*, also known as the Texas Prompt Pay Act.  They allege that, as to any insurance claims made after June 5, 2014, the defendants "improperly underpaid and untimely paid . . . timely submitted clean [insurance] claims" for emergency care and did not determine these clean insurance claims "were payable at the rate of payment" the plaintiffs set forth.[55]  To determine whether this is so, as before, the Court begins with the text of the statute.

The Prompt Pay Act defines a clean insurance claim (somewhat unhelpfully) as "a claim that complies with [Insurance Code] Section 1301.131."[56]  That referenced section contains a litany of elements an insurance claim must satisfy to be considered "clean."[57]    Section 1301.103 requires payment of clean claims (or notice of nonpayment) within either 30 or 45 days to the "preferred provider" who submitted it, depending on how the claim was submitted.[58]

---

[54] Because the Court holds that the plaintiffs lack standing, it declines to address their other arguments regarding Count VI.

[55] Doc. 55 at 62.

[56] TEX. INS. CODE § 1301.101.

[57] The Court will at this point refrain from determining whether any allegedly unpaid or underpaid insurance claim in this case is "clean," as that would mean delving into facts the Court doesn't yet have.

[58] § 1301.103.  *See also* § 843.338.  The Court notes that the Fifth Circuit has ruled that section 1301.103 is preempted as to any insurance claims made under Federal Employee Health Benefits Act-governed plans.  *See Health Care Serv. Corp. v. Methodist Hosps. of Dallas*, 814 F.3d 242, 253–55 (5th Cir. 2016) (recognizing preemption by 5 U.S.C. § 8902).  The Court also notes that the relevant

The Prompt Pay Act's clean-claim deadlines apply as well to insurance claims by out-of-network (or nonpreferred) providers who offer emergency care "as required by state or federal law[.]"[59]  The plaintiffs claim that they are required to provide emergency care by law, and may therefore recover under the Prompt Pay Act.[60]  The defendants make two counter-arguments in their motion to dismiss: that the plaintiffs lack standing because they are not required to provide emergency care, and that the plaintiffs cannot recover penalties because they are out-of-network providers.  But the Court does not need to reach the latter argument, because the plaintiffs lack standing to sue under federal and state law.

The pertinent federal law, a subpart of the Emergency Medical Treatment and Labor Act ("Emergency Treatment Act"), reads in relevant part as follows:

> If any individual (whether or not eligible for benefits under this subchapter) comes to a *hospital* and the *hospital* determines that the individual has an emergency medical condition, the *hospital* must provide either . . . within the staff and facilities available at the *hospital*, for such further medical examination and such treatment as may be required to stabilize the medical condition, or . . . for transfer of the individual to another medical facility. . . .[61]

---

definition of "preferred provider" only includes physicians, health care providers, or organizations of physicians or health care providers that "contract[] with an insurer."  TEX. INS. CODE § 1301.001(8). As the plaintiffs are admittedly out-of-network and thus not preferred, *see* Doc. 55 at 7, section 1301 only applies to them in limited fashion through section 1301.069.

[59] *Id*. at § 1301.069(2)(A).

[60] 42 U.S.C. §§ 1395dd(b)(1); TEX. HEALTH & SAFETY CODE 311.022.

[61] 42 U.S.C. § 1395dd(b)(1)(A)–(B) (whole lotta emphases added).

Simply put, the plaintiffs are physicians' associations.[62]  They are not a hospital.[63]  The plain text of this federal statute does not require them to do anything.  It places the entire onus to provide emergency medical treatment or transfer on hospitals.  The Court can find no precedential or persuasive case requiring physicians' associations (or individual physicians, for that matter) to provide emergency treatment based on the Emergency Treatment Act.[64]  Neither do the plaintiffs provide one.  The Emergency Treatment Act does not provide the plaintiffs with standing to sue under the Prompt Pay Act.

And neither does the plaintiffs' proffered state statute apply to them.  Section 311.022 of Texas's Health & Safety Code prohibits "[a]n officer, employee, or medical staff member of a general hospital" from denying emergency services due to the patient's "[in]ability to pay[,] . . . race, religion, or national ancestry."[65]  First, again, the plaintiffs are not "[a]n officer, employee, or medical staff member" at a hospital.  Some individual physician *members* of the plaintiff organizations may be covered.  All

---

[62] *See* Doc. 218 at 39 ("Plaintiffs are groups of physicians . . .").

[63] Generally, hospitals tend not to employ physicians and instead have affiliations or admitting privileges with physicians.  This practice often stems from state laws requiring individuals to be licensed to practice medicine and state judicial decisions interpreting those laws to prohibit hospitals from employing physicians.  *See* DEP'T OF HEALTH & HUMAN SERVS., OFFICE OF THE INSPECTOR GEN., STATE PROHIBITIONS ON HOSPITAL EMPLOYMENT OF PHYSICIANS (1991) (available at https://oig.hhs.gov/oei/reports/oei-01-91-00770.pdf).

[64] The plaintiffs offhandedly gesture at 42 U.S.C. § 1395dd(d)(1)(B), which imposes penalties on "any physician who is responsible for the examination, treatment, or transfer of an individual in a participating hospital" who negligently violates Emergency Treatment Act requirements.  But this statute doesn't require physicians to perform emergency medical care.  It penalizes any physician whom a hospital requires to perform such care for doing so negligently.  It has nothing to do with this suit.

[65] TEX. HEALTH & SAFETY CODE § 311.022(a).

18

of them may be.  But the plaintiffs themselves are admittedly not.  Second, based on the plain meaning of the text, this statute is not a blanket requirement to provide emergency services.   It only prohibits the *denial* of such services based on unacceptable discrimination.

Because the plaintiffs have not established (and cannot establish) based on the pleadings that the Prompt Pay Act applies to them, the Court holds that they lack standing to sue under it.  The Court dismisses Count VII with prejudice.[66]

## IV.    Anti-Assignment Provisions

Not much more remains for the Court to address, besides a number of defenses marshaled in the omnibus motion to dismiss.  Its discussion of these matters applies only to any remaining legal claims.

The defendants argue that many claims brought by the plaintiffs should be dismissed because the policies at issue contained anti-assignment provisions, so those policyholders could not have assigned their right to repayment to the plaintiffs.  The plaintiffs responded that, to the extent those plans contained anti-assignment provisions, they were waived, or the defendants were estopped from enforcing them due to the defendants' alleged past voluntary and intentional practice of paying the plaintiffs directly.

The Court does not have enough evidence to dismiss this claim because the claim hinges on several factual determinations that have not yet been made.  For

---

[66] The Court will not further address the defendants' argument that plaintiffs have no right to penalties under the Prompt Pay Act as out-of-network providers because of its dispositive holding on standing.

example, the defense of ERISA estoppel, which the plaintiffs assert, requires (1) material misrepresentation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances.[67]   The Court has not yet determined whether any of these elements are satisfied, and further discovery is needed before it can.  Furthermore, the Court has not yet held an evidentiary hearing on the previously filed declarations that the defendants offer to show that plaintiffs lack standing due to these anti-assignment provisions.  We are not yet at the fact-weighing stage.  So, the Court must decline to dismiss any claims based on the defendants' anti-assignment arguments as of yet.[68]

## V.   Remaining Claims Against South Carolina Blue and Florida Blue

Now for several jurisdictional challenges regarding certain defendants.  South Carolina Blue and Florida Blue don't think they should be here at all.  South Carolina Blue argues that all its insurance claims in this suit can only be brought before a South Carolina review board.[69]  And South Carolina Blue further claims, along with Florida Blue, that all insurance claims at issue that involve them are self-insured (*i.e.*, BlueCard Self-Funded) claims that they do not pay, only administer.[70]

---

[67] *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444–45 (5th Cir. 2005).  Because the plaintiffs assert this specific variety of estoppel, the Court notes that their defense can only apply to ERISA-governed policies with anti-assignment clauses.

[68] *See Lawal v. Lynch*, 156 F. Supp. 3d 846, 852 (S.D. Tex. 2016) (holding that district courts have "wide discretion" in resolving Rule 12(b)(1) subject-matter jurisdiction issues brought up in motions to dismiss).

[69] Doc. 212 at 50.

[70] *Id.* at 51.

Again, as before, the Court believes dismissal on these grounds is premature before discovery. These are disputed assertions of fact, not purely or primarily legal. And the Court has held no evidentiary hearing on the matter. The Court will therefore exercise its discretion to deny dismissal on this jurisdictional ground because the plaintiff "has [not] had a chance to discover the facts necessary to establish jurisdiction."[71]

## VI.   Remaining Claims Against Capital BlueCross

Defendant Capital BlueCross adopts a different approach than South Carolina Blue and Florida Blue. It argues that this court has no *personal* jurisdiction over claims in which it's involved.

Personal jurisdiction is established when (1) the defendant has sufficient minimum contacts with the forum state, (2) the plaintiff's cause of action arises from those contacts, and (3) the exercise of personal jurisdiction is both fair and reasonable.[72] Capital BlueCross protests that it lacks sufficient minimum contacts with Texas (the forum state of this suit) because they have not engaged in actions that substantially connect them to Texas. It claims it has no physical presence in Texas and does not conduct business here, based on existing declarations attached to its motion to dismiss. Moreover, Capital BlueCross argues that because it never had a contract with any of the plaintiffs or engaged in conduct connected to Texas with

---

[71] *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981).

[72] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).  ERISA allows for nationwide service of process, so rather than looking for sufficient minimum contacts with Texas, we look for sufficient contacts anywhere in the United States.  *See* 29 U.S.C. § 1132(e)(2).

respect to any of the insurance claims at issue, it cannot "reasonably anticipate being haled into court" in Texas.[73]

When considering whether to dismiss a complaint for lack of personal jurisdiction, the Court "may consider affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."[74]  And the Court should accept all "uncontroverted allegations, and resolve in [the plaintiffs'] favor all conflicts between the facts contained in the parties' affidavits and other documentation."[75]

The defendants rely on a declaration filed with their earlier motion to dismiss which states that Capital Blue Cross exclusively serves customers in "central Pennsylvania and the Lehigh Valley" and provides group insurance for businesses in the same general area.[76]  Rather than disputing any of these facts, the plaintiffs argue that "when a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States," not any one state.  Strange as it seems, the Fifth Circuit has confirmed this principle.[77]  Because ERISA provides for nationwide service of process

---

[73] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

[74] *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (internal quotations and citations removed).

[75] *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

[76] *See* Doc. 122-1, at 2.

[77] *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994).  The Court fails to see the connection between service of process and personal jurisdiction, but the Court is nonetheless duty-bound to follow the Fifth Circuit's lead.

and Capital Blue Cross has minimum contacts with the United States, the Court has personal jurisdiction over Capital Blue Cross with respect to claims under it.[78]

The plaintiffs go further, though, arguing that pendent personal jurisdiction means the Court also has jurisdiction over their asserted state-law-based claims against Capital BlueCross. But because the Court has already dismissed all state-law claims for lack of standing above, Capital BlueCross's motion regarding these claims is moot.

## VII.   Remaining Claims Against CareFirst

And finally, CareFirst argues that it is not a proper party to this suit because it "does not offer health insurance, administer insurance plans, or pay insurance claims."[79] The defendants offer this assertion as grounds for both 12(b)(2) and 12(b)(6) dismissal. But the declaration they reference most notably states that CareFirst has no significant contacts with the plaintiffs or the forum state, let alone a sufficient minimum number.[80] As with the Capital BlueCross claims, this makes no difference: CareFirst has sufficient minimum contacts with the United States, and the Court may therefore exercise jurisdiction over it with respect to claims under laws allowing nationwide service of process (like ERISA).[81]

---

[78] 29 U.S.C. § 1132(e)(2).

[79] Doc. 212 at 61–62.

[80] *See* Doc. 128-1, *see also World-Wide Volkswagen*, 444 U.S. at 297.

[81] And also, as above, CareFirst's arguments to dismiss the plaintiffs' state-law-based claims are moot.

With regard to whether CareFirst is an insurer (and whether it is possible to state a claim against it under ERISA or relevant state law at all), plaintiffs respond that determining CareFirst's business structure and practices is inappropriate at this point.[82] The Court agrees with the plaintiffs. CareFirst's arguments on this point go to whether it should be part of a lawsuit on this subject anywhere in the United States. As such, this is a merits-based argument under Rule 12(b)(6). But prior to factual discovery, courts ought not dismiss claims that hinge on undeveloped facts.[83] Such a determination is more appropriate at the summary judgment stage.[84]

*   *   *

To sum up, the Court **GRANTS** the defendants' motion to dismiss with respect to Counts III, V, VI, and VII, which are hereby **DISMISSED WITH PREJUDICE**. And the Court **DISMISSES WITHOUT PREJUDICE** Count IV. The Court lastly **DISMISSES AS MOOT** all state-law-based claims against Capital BlueCross and CareFirst. But the Court **DENIES** the motion to dismiss with respect to the defendants' anti-assignment defense, subject-matter jurisdiction over South Carolina Blue and Florida Blue, and personal jurisdiction regarding any remaining ERISA

---

[82] Doc. 218 at 69–70.

[83] The Court declines to consider the aforementioned declaration without an evidentiary hearing when making its 12(b)(6) determination because the declaration itself was not referred to in the plaintiffs' complaint. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (holding that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim").

[84] *See* FED. R. CIV. P. 12(b) ("[If] matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.").

claims over Capital BlueCross and CareFirst.   The plaintiffs may refile their combined complaint with the only changes being reflective of these rulings within 28 days of this motion.

**IT IS SO ORDERED** this 10th day of December, 2020.

_____

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE